## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRENDA BRISBANE, et al., | : | |
| Plaintiffs | : | Civil Action No. 02-3584 |
| v. | : | Judge Padova |
| DENYS EVERINGHAM, et al., | : | |
| Defendants | : | |

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

## I.    INTRODUCTION

This Memorandum is filed by defendant Local 36 in opposition to a Motion for Preliminary Injunction filed by plaintiffs simultaneous with their Complaint on or about June 4, 2002. Since that time, events have transpired which have so eclipsed the occurrences described in the Complaint that this case is essentially moot.[1] Even if not moot, there is no basis for the extraordinary injunctive relief plaintiffs seek.

---

[1]    Local 36 has filed an Affidavit of Wyatt Close in support of this Memorandum which describes these events.

## II.    STATEMENT OF FACTS

Without accepting any of the facts (other than that which have been admitted in

defendant's Answer), the gravamen of plaintiffs' Complaint appears to be as

follows.  Local 36 had, by virtue of its Constitution, a President (Michael Russo), a

Vice President (Denys Everingham), a Secretary/Treasurer (Brenda Brisbane), a

Recording Secretary (Debbie Hennie), a Business Representative (Aquel

Brisbane), other Officers and an  Executive Board.  Sometime in March, 2002,

then President Russo advised the other Officers and the Executive Board that he

would be temporarily out of the office, for an indefinite period of time, because of

health reasons.  Vice-President Denys Everingham assumed the duties of the

President pursuant to Article VI, Section 2 of the Local's Constitution, which

provides that in the absence of the President, the Vice President shall discharge the

duties of the President.  Plaintiffs, however, believed that the Executive Board had

the power to appoint a new President.  They allegedly relied on the provisions of

the Local Constitution that provide that, in the case of "death, disability or

resignation" of the President, the Executive Board has the power to appoint a

President.  See Article V, Section 3.

Vice President Everingham functioned as the Acting President for

approximately two months.  Then, Brenda Brisbane asserted, by virtue of an

unauthorized vote of the Local's Executive Board on May 29, 2002, that she was President of the Local.  As of that date, President Russo, while still absent due to medical reasons, had not resigned or retired.   While, at one point, President Russo indicated that he might retire effective June 1, 2002, he subsequently (but before May 29th) wrote that he would not retire any earlier than July 1, 2002.  Moreover, there never was a determination or statement that President Russo was disabled. Accordingly, Everingham took the position that the Executive Board vote, to the extent that it lawfully met (a matter in contention), was null and void.  The actions of the plaintiffs were an unconstitutional usurpation of the office of President. Because of this and other malfeasance, Acting President Everingham suspended plaintiffs Brenda Brisbane, Aquel Brisbane and Debbie Hennie from office.  This was done on May 29, 2002 pursuant to the provision of the Local's Constitution which provides that "the President has the power to suspend or remove any officer employee of the Union for neglect of duty or malfeasance in office . . ."  (Article VI, Section 1).

Immediately thereafter, she filed charges against the three officers that she had suspended.  Everingham asked that the International Union (SEIU) assume jurisdiction over those charges pursuant to provisions of the International's Constitution, specifically, Article XVII, Section 2(f).  International President Andrew Stern decided to assume original jurisdiction over those charges and, on

May 31, 2002, issued an Appointment of a Hearing Officer (International Vice President Marc Earls) and a Notice of Hearing. In addition to assuming original jurisdiction over the charges, President Stern's Notice referenced the suspension of Brenda Brisbane, the Secretary/Treasurer, by the Acting President, as well as Brisbane's contention that she was President.

The hearing was scheduled for June 11, 2002. It was combined with a hearing on the "needs" of the Local given the internal turmoil within the Local. Plaintiffs participated and were represented by counsel. The hearing, however, with respect to the charges did not conclude on that day. It is defendant's understanding that the hearing is to be rescheduled shortly so that the issues of the charges and the suspension of plaintiffs can be adjudicated by the International Union. (See Affidavit of Wyatt Closs.)

The disputes and turmoil within the Local continued to mount. Based upon reports of the breakdown of democratic procedures within the Local, the International President Stern appointed the same Hearing Officer to conduct a hearing on June 14, 2002 in order to make a recommendation whether the International should impose a trusteeship over Local 36. After that hearing and based upon the recommendations of the Hearing Officer, the International, by Order dated June 21, 2002 appointed a Trustee, Wyatt Closs, to take charge and control of the affairs of the Local pursuant to Article VIII, Section 7 of the SEIU

Constitution and the LMRDA. The trusteeship was effective June 24, 2002. (See Affidavit of Wyatt Closs.)

By virtue of the trusteeship, the Local's Constitution and By-Laws were suspended. Moreover, all Local Union officers in governance positions were removed from their office.[2] Thus, effective June 24, 2002, plaintiff Officers were removed from their offices and no longer have any claim to those positions. Denys Everingham, by virtue of the trusteeship, was also removed from her position as Vice President and Acting President. President Russo was similarly removed. In addition, he has now applied for retirement. All members of the Executive Board have been removed from their positions; there is no Executive Board functioning during the trusteeship. All of the executive powers of the Local are in the hands of the Trustee and Deputy Trustees appointed by the International. Elections are not scheduled, even though prior to the Local's release from the trusteeship elections will be held to fill positions of governance within the Local. (See Affidavit of Wyatt Closs.) Based on his desire to promote unity within the Local and upon recommendations of the International Hearing Officer, Trustee Wyatt Closs has taken significant actions which effect this litigation. First, he has returned Brenda Brisbane, Aquel Brisbane and Debbie Hennie to employment with the Local. While they no longer are performing the duties of their former officer positions,

---

[2]        This did not include minor positions like union stewards.

they now have staff positions with the Local, known as "member advocates". Denys Everingham was also placed in an equivalent position. At the present time, all are receiving the pay they formerly received before the trusteeship. Secondly, based on the same considerations, the Trustee had issued back pay to Brenda Brisbane, Debbie Hennie and Aquel Brisbane for the four weeks during which they were suspended prior to the trusteeship.[3] Thus, plaintiffs have been made whole from a monetary point of view. They have been restored to employment with the Local and work out of its offices. Their membership rights have not been affected whatsoever. The charges that are pending against them and against other persons are in the impartial hands of the International Union. The disputes as to who is in charge of the Local are moot by virtue of the trusteeship. (See Affidavit of Wyatt Closs.)

## III.    ARGUMENT

### A.    Introduction

In order for plaintiffs to obtain a preliminary injunction under Federal Rule of Civil Procedure 65, the Court of Appeals for the Third Circuit requires that plaintiffs prove:

> 1)    that they are likely to suffer irreparable injury in the absence of injunctive relief;

---

[3]    Both actions were taken without prejudice to the Local's legal position in this lawsuit.

2)      that they will likely prevail on the merits;

3)      that granting them preliminary relief will not result in greater harm to Local 36; and

4)      that the issuance of an injunction is in the general public interest.

Shields v. Zuccarini, 254 F. 3d 476, 482 (3rd Cir. 2001); ACLU v. Reno, 217 F. 3d 162, 172 (3d Cir. 1997); ECRI v. McGraw-Hill, Inc., 809 F. 2d 223, 226 (3d Cir. 1987). The plaintiffs bear the burden of proving all of these criteria. Nutra Sweet Co. v. Vit-Mar Enterprises, Inc., 176 F. 3d 151, 153 (3d Cir. 1999). As they cannot meet their burden on any of them, this Court should deny the injunction.

## B.      Plaintiffs' Request for an Injunction is Moot

The facts, as outlined above and in the Affidavit of Wyatt Close, demonstrate that plaintiffs' request for injunctive relief is moot. First, any claim for monetary relief, even if deserving of injunctive relief, is gone insofar as the three officer plaintiffs have been returned to employment at their former salaries and have received back pay for the period of time of their suspensions. Secondly, who should serve as President of Local 36 is no longer a live dispute. With the trusteeship, there is no active position of President, Vice-President or Secretary/Treasurer, etc. The incumbents of those positions were all removed. There are no elections scheduled during the term of the trusteeship and that term has not been fixed.

-7-

Such facts render a controversy moot.  For example,  in <u>Lippi v. Thomas</u>, 298 F. Supp. 242 (M.D. Pa. 1969), the plaintiff brought suit against his union and an individual defendant for declaratory judgment to determine his eligibility for the office of union president.  The union, a few days before suit was filed, had been placed in trusteeship and no election was to take place as long as the trusteeship was effective.  Applying the test for mootness set forth in <u>Golden v. Zwickler</u>, 394 U.S. 103 (1969), the District Court found that there was no substantial controversy between the parties that was of sufficient immediacy to warrant even a declaratory judgment.  The controlling factor, in the District Court's opinion, was that an election was no longer a reality given the trusteeship.  It would be an exercise in futility for the Court to declare the plaintiff eligible for an election that would not occur.  298 F. Supp. at 245-246.  The case was dismissed as moot.

Here, the facts command the same conclusion.  The gist of plaintiffs' Complaint is their "right" to their respective offices for the balance of their terms.  Given the trusteeship, which under the LMRDA is presumptively valid for a period of eighteen (18) months[4], there are no union offices to which plaintiffs can be returned or elected.  Whether they were properly or improperly suspended by Everingham in May of 2002 is not of immediate concern because, as of June 24, 2002, they were removed from office on independent grounds by an entity (SEIU)

_____

[4]        29 U.S.C. §464(c).

-8-

which is not a party to this lawsuit.  No elections to fill these positions have been

scheduled.  Thus, plaintiffs' claims are moot.

### C.    Plaintiffs Cannot Show That They Would Suffer Irreparable Injury in the Absence of Injunctive Relief

Even if the dispute is not moot, plaintiffs will not suffer any irreparable

injury.  The plaintiffs must demonstrate that, absent the requested relief, the Court

would be unable to remedy the violation even if they ultimately succeeded on the

merits.  Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F. 2d 797, 801 (3d

Cir. 1989).  Furthermore, "[e]stablishing a risk of irreparable harm is not enough.

The plaintiffs have the burden of proving a clear showing of immediate irreparable

injury." ECRI, 809 F. 2d at 226 (emphasis added) [quoting Continental Group, Inc.

v. Amoco Chemical Corp., 614 F. 2d 351, 359 (3d Cir. 1980)].

### 1.    The Need for Imminence When Determining Irreparable Harm

When a court is considering granting preliminary injunctive relief, it must

look at not only whether the alleged injury is irreparable, but also whether the

injury is imminent.  Acierno v. New Castle County, 40 F. 3d 645, 655 (3rd Cir.

1994); Ammond v. McGahn, 532 F.2d 325, 329 (3rd Cir. 1976). There has to be a

presently existing threat.  An injunction cannot be used simply to eliminate a

possibility of a remote future injury, or a future invasion of rights, even though

those rights are protected by statute or the common law. <u>Continental Group, Inc. v.</u> <u>Amoco Chemicals Corp.</u>, 614 F.2d 351, 359 (3rd Cir. 1980).

Therefore, a court must judge the likelihood of the reoccurrence of an injury or of the behavior that caused the injury. In <u>Ammond</u>, <u>supra</u>, a state senator and two of her constituents brought an action against members of her party caucus in the state senate to recover damages for her exclusion from the caucus and to enjoin that exclusion. <u>Ammond</u>, 532 F.2d at 326. The caucus passed a resolution which excluded Senator Ammond from party proceedings. The senator's complaint was that the exclusion deprived her of her First Amendment right to freedom of speech and her right to procedural due process guaranteed by the Fourth Amendment. Senator Ammond was later readmitted to the caucus based upon the recommendation of an ad hoc committee. The Court of Appeals held that while the case was not moot, injunctive relief was no longer appropriate. It explained that, if there is no reasonable expectation that the wrong will be repeated, then the alleged harm would not be sufficiently imminent to justify injunctive relief. Since there is no evidence that the caucus would re-exclude Senator Ammond before the final hearing in the case and interfere with her alleged rights, there was no reason for the court to intervene. 532 F. 2d at 329. The preliminary injunction issued by the district court was reversed.

Another leading case that discusses the imminency requirement is
Continental Group, Inc., supra.   There, a former employer sued a former employee
and a new employer to enforce nondisclosure and noncompetition covenants.
Continental Group, Inc., 614 F.2d at 354.  The employee and the new employer
stated they were not interested in breaking the covenants; in fact, the new employer
had no interest in the information at issue.  The Court of Appeals held that the
district court erred in preliminarily enjoining acts that were neither threatened,
intended nor likely.  Id at 356.  Injunctions will not be issued, it stated, merely to
allay the fears and apprehensions or to soothe the anxieties of the parties.  Nor will
an injunction issue to restrain one from doing what he is not attempting and does
not intend to do.  Id. at 359.

The requirement for imminent harm has been applied in the labor context as
well.  In one case, an employer requested a preliminary and permanent injunction
restraining a union from engaging in a work slow down in violation of the
collective bargaining agreement.  Philadelphia Newspapers, Inc. v. Newspaper &
Magazine Employees Union, 1986 WL 9603, *1 (E.D. Pa.).  An injunction was
issued.  The employer then filed a motion for another preliminary injunction  the
union to stop it from processing retaliatory internal disciplinary proceedings
against an employee as a result of his testifying on behalf of the employer during
the hearings.  The union had fined the employee for failure to attend a disciplinary

meeting to answer charges that he violated the union bylaws by testifying against the union. Id.   The court denied the second injunction request stating that the employer did not establish that it would suffer immediate, irreparable harm. Id. at *4.  The fine closed the matter and therefore there was no continuing threat to the employer.  The employer's belief that injunctive relief was necessary so that other union members would not be deterred from testifying for it in future proceedings was not well founded since there is no imminent future proceedings and therefore no immediate irreparable harm.  Also, the availability of other remedies (an unfair labor practice charge) argued against the necessity for immediate, preliminary injunctive relief. Id.

A similar result was reached in an action under the LMRDA filed by union members against union officers. Broomer v. Schultz, 239 F. Supp. 699, 701 (E.D. Pa. 1965), aff'd per curiam, 356 F.2d 984 (3rd Cir. 1966).   The plaintiff had made several motions to have union stewards elected, which were defeated.  When the plaintiff tried to submit an identical motion one month later, the defendant officers refused to submit it to the membership.  The Court held that these facts did not show imminent and irreparable harm to the plaintiffs right to free speech.  There was no showing that the plaintiff would be prevented from speaking again on the subject.  The Court held that a  preliminary injunction was not justified where there

is no substantial probability that the plaintiffs' rights under the LMRDA would be violated in the future.

Here, there is no imminent threat as these cases require. Plaintiffs claim that irreparable harm stems from their "wrongful removal", i.e., the suspension by the Acting President Everingham. But, at the present time, plaintiffs are permanently removed because of the trusteeship imposed by SEIU on June 24, 2002. Furthermore, based upon recommendations from the Hearing Officer, plaintiffs have been returned to employment positions with the Local at their former rates of pay and have been provided with back pay for the period of time they were suspended. Thus, the effects of the original suspensions are over. To the extent that plaintiffs fear a reoccurrence, there is no basis for such a concern. President Russo has been removed from office and is now retired. Similarly, Denys Everingham is no longer in a position of authority. The Local's Constitution, which was the source of disputed authority has been suspended. A new impartial person, a Trustee appointed by SEIU, is in charge of the Local. The Trustee has admonished all the former officers not to be disruptive or interfere with the rights of members including each other. Under these circumstances, there is no imminent threat of any harm.

The cases cited by plaintiffs are easily distinguishable. In none of them have events taken place, such as present here, which supersede the initial acts of alleged

retaliation.  For example, in <u>Rupp v. Communication Workers of America</u>, 1997 WL 667882 (E.D. Pa.), plaintiffs claimed that they were being tried on trumped up charges in retaliation for a political opposition to the current officers of the union. The plaintiffs sought a preliminary injunction to enjoin the union trial from proceeding on charges that they had committed a wrongful act under a particular section of the CWA Constitution.  Those charges were being investigated and prosecuted by an ally of the local president who the plaintiffs had opposed in the last election.  The local president was to serve as the chairman of the hearing panel. The Court found that prosecutions under that vague provision of the constitution had been brought only against political dissidents, and that, under these unique circumstances, there was an ongoing threat.  <u>Id</u>. at *4.

Here, the Local's Constitution has been suspended.  There is no history of alleged retaliation against dissidents.  The persons previously in charge of the Local have been removed from office.  The pending hearing involves charges both against defendant Everingham, as well as the plaintiffs.  That hearing is being conducted by an impartial Hearing Officer appointed by the International.  Indeed, that Hearing Officer recommended to the Trustee that the plaintiff officers be reinstated to employment with the Local and be made whole for any wages they lost as a result of the suspension.

-14-

Similarly, <u>Matthews v. Sutton</u>, 1996 WL 515221 (E.D. Pa. ), another case cited by plaintiffs, is distinguishable. There, the threat of immediate harm stemmed from the possibility that Matthews would be removed from his elected position in retaliation for the exercise of free speech. In addition, a rerun election was to be held in 60 days; Matthews asserted his speech during the electoral process would be chilled. Here, plaintiffs are removed from their position purely by virtue of the trusteeship. There is no election scheduled in the near future. Plaintiffs retain their rights of membership and thus their right to free speech.

Nor can plaintiffs seek comfort in the decision of the Third Circuit in <u>Ruocchio v. United Transportation Union</u>, 181 F. 3d 376 (3d Cir. 1999). In that case a suspended local union treasurer brought an action alleging violations of the LMRDA over his removal for being a political opponent to the current administration of the local union. The District Court dismissed the case as moot because Ruocchio had been reinstated under internal union processes. The Third Circuit found that the case was not moot and remanded it back to the District Court for further proceedings, including injunctive relief. The Appeals Court, relying upon its prior decision in <u>Mallick v. International Brotherhood of Electrical Workers</u>, 644 F. 2d 288 (3d Cir. 1981), was concerned about the possibility of future charges based on overly broad prohibitions in the union's constitution. 181 F. 3d at 386. In <u>Mallick</u>, the constitution made slandering, false reports or

misrepresentations, a punishable offense.   In <u>Ruocchio</u>, the constitution made the willful circulation of untrue statements to be a punishable offense.  The Court found that Ruocchio should have the right to argue that declaratory and injunctive[5] relief were appropriate because of the ongoing threat of future charges relying on this overly broad constitutional prohibition.

Here, the Local's Constitution, under which the actions against plaintiffs were taken, is no longer in effect.  Those who wielded power within the Local are no longer in office.  Thus, there is no threat of future prosecutions under an overly broad or vague provision of the Constitution.  Nor is there any imminent threat that other elected officials could be removed for their alleged exercise of protected rights insofar as there are no elected officials in office.  The Trustee has acted impartially as to the plaintiffs.

For these reasons, this case even if not moot, does not present a threat of imminent harm to the plaintiffs.

## 2.    The Harm Claimed is Not Irreparable.

While plaintiffs assert violation of free speech rights, this case does not implicate such rights.  Not all claims of violation of free speech rights warrant the issuance of injunctions.  The assertion of First Amendment rights does not

---

[5]      The Court was not specifically addressing a preliminary injunction as opposed to final injunctive relief, and it did <u>not</u> decide whether such relief was warranted.  181 F. 3d at 387.

automatically require a finding of irreparable injury thus entitling a plaintiff to a preliminary injunction.  Hohe v. Casey, 868 F. 2d 69, 72 (3d Cir. 1989).  In Hohe, the Court found that the deduction of fair share fees may deprive non-members of monies they might use to support their own political activities, but it was not irreparable harm.  That loss was an incidental inhibition as opposed to a direct penalization.  Furthermore, it could be compensated by money damages.

Here, plaintiffs seek equitable relief in the form of back pay and benefits for the period of their suspension.  This "remedy" has already been given to them, and  the loss of such compensation does not, in any event, constitute irreparable harm.  To the extent plaintiffs claim some loss of reputation, that, too, can be compensated in money damages.  Furthermore, alleged harm to reputation would not impact any bid for election to office as no elections are scheduled.  Finally, as discussed below, plaintiffs were suspended for their conduct, not their speech.

### D.  Plaintiffs Will Not Prevail on the Merits.

#### 1.  Section 301 Claims

Plaintiffs assert a breach of contract claim pursuant to §301 of the Labor Management Relations Act, 29 U.S.C. §185.  First, the Court lacks subject matter jurisdiction over this claim.  Secondly, assuming without admitting, that

plaintiffs have stated a claim under this Section, they have not met their burden to show a likelihood of success on the merits.

Suits under §301 of the LMRA must be either for (a) a violation of a contract between an employer and the labor organization; or (b) a violation of a contract between labor organizations. 29 U.S.C. §185(a). The United States Supreme Court has addressed the question of whether district courts have jurisdiction over a breach of contract suit brought by a union member against his local union. The Court held that a union member could bring suit pursuant to §301, as long as the suit established a violation of a contract between two unions. Wooddell v. International Brotherhood of Electrical Workers, Local 71, 502 U.S. 93 (1991). The Court had previously held that an international constitution could be considered a contract between two labor organizations. Plumbers and Pipefitters v. Plumbers and Pipefitters Local 334, 452 U.S. 615, 621 (1981). But the Supreme Court has not specifically addressed the issue here of whether an individual can sue under §301 based upon a local union constitution.

Following these two Supreme Court cases, the Seventh Circuit has addressed this issue. Korzen v. Local Union 705, International Brotherhood of Teamsters, 75 F. 3d 285 (7th Cir. 1996). Plaintiffs were terminated employees of a local union who claimed they were fired due to their political support for an opposition candidate. The Court of Appeals, by Chief Judge Pozner, held that there was

federal jurisdiction under §301 over the claim for breach of the <u>International</u>
<u>Union's constitution</u>, although, it then held that the provisions of the international
constitution relied upon did not confer rights on the union's employees.
Significantly, the Court of Appeals also held that there was no jurisdiction over
claims for breach of the <u>local</u> union's constitution.  That constitution may be a
contract between the union and its members, but it is not a contract between two
labor organizations.  75 F. 3d at 288-289.  <u>See</u>, <u>International Brotherhood of</u>
<u>Electrical Workers v. Dueck</u>, 148 F. Supp. 2d 955, 962-963 (D. Arizona 2000);
<u>Brown v. Local 701 of IBEW</u>, 996 F. Supp. 781, 785 (N.D. Ill. 1998); <u>Diamond v.</u>
<u>United Food and Commercial Workers Union, Local 881</u>, 1997 WL 667823 (N.D.
Ill.)

  The only substantive claims in this case are alleged violations of the Local's
Constitution, for example, who had the right to be President, whether the Acting
President Everingham had the right to suspend other officers, etc.  This Court lacks
jurisdiction over those claims for the reasons set forth in <u>Korzen</u>.  To the extent
there is jurisdiction, the claims are without merit.  Plaintiffs rely upon Article V,
Section 3 of the Local's Constitution and By-Laws which states that "in the case of
death, disability, or resignation of the President", the Vice President shall assume
the duties of the President but for a period of not longer than thirty (30) days.
They also rely upon Article VI, Section 8, which similarly triggers the power of

appointment by the Executive Board "in the case of death, disability, or resignation of the President".   These provisions do not apply.  President Michael Russo did not die.  There has been no determination of his disability.  Rather, plaintiffs assert that the President resigned effective June 1, 2002 so that on May 29, 2002, the Executive Board could appoint Brenda Brisbane as President.  However, President Russo did <u>not</u> resign on May 29 or on June 1.  While he indicated at one point a possibility of retirement as of June 1, he subsequently changed that intent by stating, in letter of May 25, 2002 to the Executive Board members, that he is "not planning to retire from Local 36 anytime earlier than July 1, 2002." (See Complaint at ¶22.)  Accordingly, the Executive Board simply had no power to appoint a President.  There already was a President!

The applicable provision of the Local Constitution is not that cited by plaintiffs, but Article VI, Section 3, which provides in material part: "in the absence of the President, he/she (the Vice President) shall in every respect discharge the duties of the President."  Given the absence of President Russo, this provision triggered an obligation on the part of Vice President Everingham to assume the duties of President.  Thus, plaintiffs' contractual claims with regard to Ms. Brisbane's right to be appointed President are erroneous as a matter of law.

Similarly, Ms. Brisbane's claim that she could not be suspended as a matter of contract is erroneous.  Among the duties of the President set forth in Article VI,

-20-

Section 1 of the Local Constitution, is the ". . . power to remove or suspend any

officer or employee of the Union for neglect of duty or malfeasance in office."

Defendant Everingham, discharging the duties of the President, therefore, had the

power to suspend Brenda Brisbane, Debbie Hennie and Aquel Brisbane for,

among other things, attempting to usurp the office of President. In addition, Denys

Everingham subsequently filed charges against those plaintiffs to support her

action. The International Union has assumed original jurisdiction over those

charges and thus over the suspension.[6] Therefore, there is no breach of contract

with respect to the suspension of plaintiff officers or with respect to the failure to

recognize Brenda Brisbane as President of Local 36.

## 2.    Section 101(a)(2) Claims.

The removal of an elected union officer may constitute a violation of the

right to free speech protected by the LMRDA. Sheet Metal Workers International

Association v. Lynn, 488 U.S. 347 (1989). However, in Lynn, the Supreme Court

was careful to distinguish between the dismissal of an elected rather than an

appointed official. Only the former could possibly impede the democratic

governance of the union. Id. at 356. Before Lynn, the Supreme Court held that

appointed union officials could be discharged for supporting an unsuccessful

---

[6]    The SEIU Constitution provides that the International President may assume original jurisdiction over charges filed against local officers or members. Article XVII, Section 2(f).

candidate.  In <u>Finnegan v. Leu</u>, 456 U.S. 431 (1982), the Supreme Court held that

the LMRDA did not prohibit removal of appointed union employees because it

only applied to union members, and the removal of an appointed official did not

affect a union member's rights or status as a member.  See, <u>Ross v. Hotel</u>

<u>Employees and Restaurant Employees International Union</u>, 266 F. 3d 236, 250 (3rd

Cir. 2001) [where the Court reiterated the proposition that the LMRDA is applied

differently to appointed officials than elected officials].

From this brief discussion, certain of the claims of the plaintiffs must fail.

Plaintiff Brenda Brisbane's assertion that the failure of defendants to recognize her

as President cannot, as a matter of law, be a violation of §101(a)(2) of the

LMRDA.  Any claim that Brenda Brisbane had to the position of President was

through an alleged <u>appointment</u> power of the Executive Board.[7]  (Complaint at ¶18

and ¶46)  Furthermore, Aquel Brisbane served in the position as the Business

Representative of the Local by virtue of an <u>appointment</u> to the position rather than

an election.  (See Complaint at ¶36) Under the cases cited above, removal from

appointed positions is not protected by §101(a)(2) of the LMRDA.

---

[7]       The full membership of the Local did not have the opportunity to speak on the
issue of who should be president.  As plaintiffs' complaint indicates, a June 1, 2002
membership meeting was aborted due to disruptions.  Including those caused by Ms. Brisbane's
unlawful claim to be President on that date.  (Complaint at ¶24.)

The remaining claims allege that the suspension of plaintiff Officers Brenda Brisbane and Debbie Hennie from their positions as Secretary-Treasurer and Recording Secretary respectively violated the free speech rights of union members. To the extent that those claims are not moot, as argued above, they lack merit. Plaintiffs were not suspended from office because of their exercise of the right to free speech. As members, they continue to have that right. Their membership status was not affected by the suspensions. Ms. Brisbane and those who actively conspired with her were suspended, pending the outcome of the internal union charges, because of insubordinate conduct. Although a union member is free to criticize union policies and management, §101(a)(2) of the LMRDA permits the expulsion of any member who attempts to threaten the union as an institution or to interfere with the union's performance of legal or contractual obligations. Glover v. Ossey, 1995 WL 374029, *6 (N.D. Ill.) A union official has certain duties towards the organization and its leadership which he or she cannot openly defy. Yeager v. Carey, 910 F. Supp. 704, 722 (D.D.C. 1995) aff'd, 159 F. 3d (D.C. Cir. 1998)

The facts of Yeager are revealing in distinguishing between charges brought against union officials aimed at their conduct of violating the union constitution as opposed to their speech. In Yeager, plaintiff Kaiser, with plaintiff Yeager's approval, attempted to remove Charles Lee from his position as union

chair of a joint committee. Kaiser, with Yeager's approval, then appointed himself to that position. Defendant Carey, the General President of the International Union, informed Kaiser that he lacked the authority to remove or appoint the union chair. The plaintiffs disputed Carey's interpretation, refused to recognize Lee as the union chair, and held a meeting at which representatives elected Kaiser as union chair over Lee. Again, Carey notified Kaiser that his actions were unauthorized. Thereafter, both Lee and Kaiser asserted that they were the authorized union chair of the committee. The International's Executive Board then determined that the President had the right to appoint union chairs and Carey sent additional letters to Yeager and Kaiser to advise them that Lee was recognized as the chair. When they refused to comply, Carey filed internal charges against the plaintiffs. A panel appointed to hear the charges concluded that the plaintiffs acted improperly and stripped them of their union membership unless they complied with the president's directives within five days.

The Court held that this discipline was imposed for the conduct of the plaintiffs not their political speech. A union official, the Court explained, is obligated to carry out the union's policies and programs and may not engage in conduct inconsistent with those duties without risking removal of his position as an official. 910 F. Supp. at 721, 722. See also, Commer v. McEntee, 121 F. Supp. 2d 388 (S.D. N.Y. 2000), aff'd by 2001 WL 830621 (2nd Cir.) [defendant did not

suppress plaintiff's freedom of speech when plaintiff ignored the constitutional process for distributing literature].  The decision on Yeager relied on principles set forth by the Second Circuit in Newman v. Local 1101, Communication Workers, 570 F. 2d 439 (2d Cir. 1978).   In Newman, the Second Circuit reversed a decision in favor of a union steward who lost his position after speaking against the negotiating policy adopted by the union leadership.  The Court concluded that Newman was unwilling to explain the Local's programs and policies to members in a manner designed to enlist their cooperative understanding of it was obvious.  Under those circumstances, his political interests were incompatible with his principal duties as a steward and he could be removed.

As in Yeager, plaintiffs here have engaged in insubordinate conduct.  They have usurped the position of President.  As of May 29, 2002, the President of the Local was Michael Russo.  In his absence, Denys Everingham was the Acting President.  Brisbane and her supporters had no right to conduct a vote of the Executive Board meeting to appoint her as President.  This action  threatened the Union as an institution and was a recipe for disaster.  No wonder that the membership meeting on July 1, 2002 could not be concluded.  As plaintiffs admit in their Complaint, Brenda Brisbane sought to act "in her capacity as President" during that meeting."  (See Complaint at ¶24) As of June 1, due to Plaintiffs' action, there were three persons claiming to be President: Russo, who was on

leave; Everingham, who was Acting President; and now Brenda Brisbane. There is no reasonable interpretation of the Union's Constitution that would support a claim that, on June 1, Brenda Brisbane was President of the Local given that Michael Russo had not, as of that date, retired or resigned. Imposing discipline in the form of suspension pending the outcome of internal charges against Brenda Brisbane and those who conspired with her does not constitute suppression of speech, as it was based on conduct which undermined Local 36 as an institution.

Furthermore, the likelihood of success on plaintiffs' LMRDA claim depends on the likelihood of success on their claim that the constitution was violated. See, e.g., <u>Fahy v. Haas</u>, 1987 WL 15932 (D.D.C.) Where the constitution relied upon is at best ambiguous for the plaintiffs, and where the defendants' construction of the constitution is reasonable, an injunction will not issue. <u>Id</u>. Here, plaintiffs rely upon an erroneous interpretation of the Local's Constitution, citing a provision which is simply not applicable. Defendants, on the other hand, relied upon a reasonable interpretation of the Constitution that during the absence of President Russo, Vice President Everingham was Acting President. Therefore, plaintiff officers cannot show a likelihood of success on their claims under Section 101(a)(2) of the LMRDA.

### 3.    Section 101(a)(1) Claim

Plaintiffs also claim that the "equal right" to vote provision of the LMRDA was violated when plaintiff Officers were suspended and when defendants disregarded the action of the Executive Board appointing Brenda Brisbane as President.  This claim also lacks any merit.  Plaintiffs cite no case in support of their §101(a)(1) cause of action.  Nor is there any.  Lynn is limited to its holding that the rights of members to free speech and assembly may be affected if elected officers are removed.  Lynn does not extend to §101(a)(1) rights.  In Argentine v. United Steel Workers Association, 23 F. Supp. 2d 808 (S.D. Ohio 1988), the Court considered whether the removal of union officials violated §101(a)(1).  There, former union officers sued the International Union when it removed them from office and imposed a trusteeship on the Local.  The International justified the trusteeship on the financial malpractice of the officers, while the plaintiffs claimed they were removed because they opposed a new collective bargaining agreement.  Regardless, the Court found that the plaintiffs continued to enjoy all the rights listed in §101(a)(1):  they could still nominate candidates, vote in elections, attend union meetings, etc.  Therefore, no violation of that section of the LMRDA existed.

Here, plaintiffs' rights as members have not been affected.  They continue to enjoy all rights that other members enjoy.  Furthermore,  it is absurd to suggest, as do plaintiffs, that the alleged <u>appointment</u> of Brenda Brisbane as President, or the <u>appointment</u> of Aquel Brisbane as Business Representative, implicate the right to vote.  Plaintiffs, therefore, cannot prevail on the merits of their Title I claims.

### 4.    <u>Plaintiffs have not exhausted internal union remedies.</u>

The charges underlying the suspension of plaintiff officers are pending before a Hearing Officer appointed by the International Union.  One day of hearing has been held, but the matter was not concluded.  Under both the Local and International Constitutions, a member is to exhaust internal union remedies before bringing suit.  Article XII, Section 5 of the Local Constitution provides as follows:

> Subject to the provisions of applicable statutes, every member or officer of this local union against whom charges have been preferred and disciplinary action taken agrees, as a condition of membership or affiliation and the continuation of membership or affiliation, to exhaust all remedies provided for in the Constitution and By-Laws of the International Union and in this Constitution, and further agrees not to file or prosecute any action in any court, tribunal or any agency, until those remedies have been exhausted.

The International Constitution has a similar obligation to exhaust procedural remedies in Article XXIII A.

-28-

Defendant recognizes that Section 411(a)(4) of the LMRDA prevents the union from punishing a member for suing the union without first exhausting internal union procedures. See Pawlak v. Greenawalt, 628 F. 2d 826 (3d Cir. 1980) However, the Court has discretion to require exhaustion before exercising jurisdiction. See, Mallick, supra, 644 F. 2d at 237. In Pawlak, the Court noted that suits by union members who cannot demonstrate a "valid reason" for failing to exhaust internal union procedures usually will be dismissed by trial courts. 628 F. 2d at 830-831.

In Anjelino v. New York Times Company, 200 F. 3d 73 (3d Cir. 2000), former employees brought claims against their former employer and union for sex and race discrimination, violations of the Labor Management Relations Act and the Labor Management Reporting and Disclosure Act. The District Court granted summary judgment against the former employees. The Court of Appeals, affirming in part and reversing in part, held that the employees failed to exhaust internal union remedies as to their LMRA and LMRDA claims. 200 F. 3d at 99. Similarly, in Amalgamated Clothing Workers of America Rank and File Committee v. Amalgamated Clothing Workers of America, 473 F. 2d 1303 (3d Cir. 1973), the Court affirmed a denial of a request for an injunction, among other grounds, because the plaintiffs had not exhausted their internal union remedies before bringing their claims for violations of Title I of the LMRDA. The Court

noted that there was no showing of irreparable harm or futility of the internal

appeal, so that exhaustion would be appropriate.  473 F. 2d at 1308.  Accord,

Harris v. International Longshoremen's Association Local 1291, 321 F. 2d 801 (3d

Cir. 1963).

Here, there is no reason for failing to exhaust internal union remedies.  They

are not futile.  They are being conducted by an impartial Hearing Officer appointed

by the International President.[8]  The parties had a day of hearing in which they had

an opportunity to be heard and to be represented by counsel.   The Hearing Officer

has recommended to the Trustee, as an interim matter, that plaintiffs Brenda

Brisbane, Aquel Brisbane and Debbie Hennie be employed and given back pay.

This more than demonstrates the impartiality of the the internal union remedies that

are in place.  Given the lack of any irreparable harm, this Court should stay its

hand while these internal procedures are exhausted.

### 5.    Section 1981 Claims

Plaintiffs' reliance upon §1981 of the Civil Rights Act of 1991 is completely

unfounded.  First, it is premised on an unsupported proposition that the Local's

Constitution and By-Laws constitute not just a contract with the members, but an

employment contract for plaintiff Officers.  This is an unprecedented view.

---

[8]    The International President has the power to assume jurisdiction over local union charges.  See SEIU Constitution at Article XVII, Section 2(f).  He has the authority "to decide on all points of law submitted to him . . . subject to appeal . . .".  Article VIII, Section 1(h).

Secondly, assuming the Constitution is an employment contract, for the reasons set forth above, the claim of breach is not supported by the language of the document and the facts of this case.  Thirdly, the conclusory assertion that the removal of plaintiff officers was intended to deprive plaintiffs of their contractual rights on the basis of their race (African-American) is not supported by any facts.  Indeed, other allegations in plaintiffs' complaint assert that the motivation for their suspension was political, not racial.  (Complaint ¶29)  Plaintiffs, therefore, do not have any likelihood of success on the merits of this claim.


**E.    The Granting of Preliminary Relief will Result in Even Greater Harm to Local 36**

Before granting a preliminary injunction there must be a balancing of harms. Granting the request for relief sought by plaintiffs would do more substantial harm to the Local.

Plaintiffs seek to return to their respective union offices and, in the case of Brenda Brisbane, to be installed as President of Local 36.  However, given the trusteeship, these positions no longer are filled.  They will remain unfilled for the length of the trusteeship.  Given that the trusteeship was imposed after a duly convened hearing, it is presumably valid for a period of eighteen (18) months.  29

U.S.C. §464 (c).  Moreover, this case does not challenge the International's imposition of a trusteeship, and the International is not a defendant.

The trusteeship was imposed in order to restore democratic procedures, to assure the performance of collective bargaining agreements, to enable the Local to prepare for negotiations and to protect the Local's important organizing campaign. (See Order of Trusteeship dated June 21, 2002).  Prior to the trusteeship, given the competing claims as to who was running the Local, there was a breakdown in democratic procedures and an impairment of the Local's important obligations.  To return plaintiffs to their offices would return the Local to political chaos.  It would impede the efforts of the Trustee to secure collective bargaining agreements and to continue the Local's important organizing efforts.  Therefore, to the extent that plaintiffs' prayers for relief are not moot, they would, if granted, impose greater harm on the Local than the refusal of an injunction would cause on plaintiffs.  This is especially true insofar as the Trustee, on the recommendation of the International's Hearing Officer, has returned plaintiff Officers to positions of employment with the Local and restored their pay.  In these positions, supervised by the Trustee, they can work for the benefit of the members of Local 36.

### F.    The Denial of an Injunction is in the General Public Interest

The situation existing at the time this lawsuit was filed, to which plaintiffs seek to return, was not in the public interest.  Union meetings were disrupted necessitating the intervention of the Philadelphia Police.  (See Plaintiffs' Complaint

at ¶¶16-17) The Local's reputation suffered as did its important efforts to organize underpaid and exploited business service workers. This is not in the public interest. Moreover, given the presumptive validity of the trusteeship as established by the LMRDA, the public interest would not be served by injunctions which undermine that justified trusteeship. Accordingly, the fourth criteria for the issuance of preliminary injunction has not been met.

## IV.    **CONCLUSION**

For the reasons stated above, defendant Local 36 respectfully requests that this Court deny plaintiffs' motion for a preliminary injunction. Furthermore, because plaintiffs' continued pursuit of this motion for preliminary injunction after the trusteeship was imposed on June 24, 2002 is unreasonable and frivolous and as caused unnecessary litigation, defendant Local 36 asks that the Court award it attorneys' fees and costs under F.R.C.P., Rule 11(c)(1)(B).

Respectfully submitted,

_____
Bruce M. Ludwig, Esquire
SHELLER, LUDWIG & BADEY, P.C.
1528 Walnut Street, 3rd Floor
Philadelphia, PA 19102
(215) 790-7300
Fax: (215) 546-0942
Attorneys for Defendant Local 36

Dated:        August 9, 2002

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BRENDA BRISBANE, et al.,              :

      Plaintiffs              :        Civil Action No. 02-3584

      v.              :        Judge Padova

DENYS EVERINGHAM, et al.,              :

      Defendants              :

## CERTIFICATE OF SERVICE

    I, Bruce M. Ludwig, Esquire, hereby certify that I served, by first class mail, the attached Memorandum of Law in Opposition to Plaintiffs' Motion for a Preliminary Injunction and Affidavit of Wyatt Closs Submitted in Support of the Memorandum upon all counsel on this date as follows:

        Charles F. Szymanski, Esquire
        MARKOWITZ & RICHMAN
        121 S. Broad Street
        1100 North American Building
        Philadelphia, PA 19107
        [Attorneys for Plaintiffs]

        Theodore M. Lieverman, Esquire
        SPECTOR, ROSEMAN & KODROFF, P.C.
        1818 Market Street, Suite 2500
        Philadelphia, PA 19106
        [Attorneys for Defendant Denys Everingham]

                      _____

                                    Bruce M. Ludwig
Dated:          August 9, 2002